[No. C036345. Third Dist. May 24, 2001.]

In re WILLIAM G., JR., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
WILLIAM G., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through IV of the Discussion.

424

**Counsel**

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

**Opinion**

**NICHOLSON, J.**—William G., Sr., father of the minor William G., Jr., appeals from the termination of his parental rights, contending the juvenile court failed to comply with the Indian Child Welfare Act in numerous respects. (Welf. & Inst. Code, §§ 366.26, 395.)[1] We affirm the judgment.

### Facts

A petition was filed by the Sacramento County Department of Health and Human Services (DHHS) in April 1999 alleging the 19-month-old minor was at substantial risk of harm because his mother had a substance abuse problem and the home had exposed electrical wires and other unsafe and

---

[1]Further unspecified statutory references are to this code.

unsanitary conditions. Police had been called to the residence on a report that a suspicious subject was possibly selling narcotics to juveniles. Although this report was not substantiated, the minor's mother told the officer that appellant "was probably the person that they were looking for." The mother told the officer that appellant was a methamphetamine and marijuana user and, on occasion, had drugs in the residence. The mother advised the officer that appellant had fled through the bathroom window prior to their arrival.

Several attempts were made to locate appellant to offer him services prior to court intervention. A letter requesting contact for an interview was hand-delivered to appellant's residence. Notice of the detention hearing and a copy of the detention order containing notice of the jurisdictional hearing were delivered to appellant's address. The minor's mother advised the social worker she had seen appellant and "he would probably not be available due to a warrant situation that he believes he has pending."

The social worker's jurisdictional report provided information about appellant's criminal history, which consisted of convictions for burglary, assault, felony driving under the influence of alcohol, and possession of narcotics for which he was on probation. The social worker recommended that a case plan be offered to appellant once his paternity was established, if the court determined this would be in the minor's best interest.[2] Appellant did not appear at the jurisdictional hearing. Reunification services were ordered for the mother but denied for appellant under section 361.5, subdivision (a).[3]

At the six-month review hearing, DHHS had not had contact with appellant. Notice of the hearing was sent to him at his last known address. Appellant did not appear at the hearing. The court set a section 366.26 hearing.

Appellant was served with notice of the section 366.26 hearing in December 1999 while in custody. In March 2000, appellant appeared at the scheduled section 366.26 hearing and informed the court that he was of Cherokee heritage. He also advised the court that he had been diagnosed four months earlier with a bipolar disorder and was on medication. The court continued the matter to assure compliance with the Indian Child Welfare Act (the Act).

---

[2]Section 361.5, subdivision (a), provides, in part: "Upon a finding and declaration of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child."

[3]See footnote 2, *ante.*

At the next hearing, the court appointed counsel for appellant and ordered that notice of the proceedings be sent to the Cherokee Nation in Oklahoma. At a subsequent hearing, appellant's counsel provided the court with a declaration of paternity signed by both parents. Appellant requested that visitation be assessed, which the court denied in the absence of a section 388 petition. Appellant did not file a section 388 petition and did not make any further requests for visitation.

The Cherokee Nation filed a notice of intervention, setting forth its determination that the minor was an Indian child. At a hearing in June 2000, the tribe asserted there had not been compliance with the "active efforts" requirement of the Act because appellant was not offered a treatment plan when he initially appeared in the proceedings. Appellant's attorney argued that the court could not proceed with the section 366.26 hearing because the testimony of an Indian expert was required and there was not evidence beyond a reasonable doubt before the court "that termination should occur."

In a written pretrial statement, appellant asserted the Act had not been complied with "in terms of having expert testimony proffered by the Department to establish the evidence necessary to terminate his parental rights . . . ." Appellant contended that there was "very little information [before the court] about [appellant] or his ability to care for his son" and that DHHS needed to assess him in order to "find the information necessary" to terminate parental rights. Additionally, appellant again asserted that he had not been "offered the opportunity to participate in any services" and he requested the opportunity to reunify with the minor. Appellant indicated his intent to testify at the hearing and to call his sister and the social worker as witnesses.

In August 2000, an addendum to the social worker's section 366.26 report was filed. Attached to the addendum was an "ICWA Report" prepared by Dr. Wynne DuBray, which included a statement of Dr. DuBray's qualifications and expertise in the area of Indian child welfare. Dr. DuBray's evaluation was based on court documents and other reports made available by DHHS, as well as discussions with the social worker. In a letter to the social worker, Dr. DuBray stated the information contained in the documents was sufficient for an adequate evaluation of the case.

Under the assessment section of the report, Dr. DuBray stated: "After examining the court reports and other supporting documents it appears that both biological parents are gravely impaired by both substance abuse and the fathers [sic] mental illness. Both have criminal backgrounds and behavior which has placed the minor at risk of great harm. Both parents have been on

probation and/or parole and the father will be on probation until January 6, 2002. Neither parent appears able to provide a safe and protective environment for this minor." Dr. DuBray concluded: "The violent criminal history, substance abuse and mental illness of one of the parents in this case appear to provide evidence beyond a reasonable doubt that termination of parental rights for this child would not be detrimental."

On August 11, 2000, at the section 366.26 hearing, appellant and the tribe objected to termination of parental rights because appellant had not been offered reunification services. Appellant did not object to the absence of expert testimony and did not present any of his own witnesses.

The court found by clear and convincing evidence that the minor would be adopted and that termination of parental rights would not be detrimental. The court also stated: "Based on Dr. DuBray's report, . . . I do find beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child . . . ." The court continued: "[T]he Court found that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the break up of the Indian family and the efforts were unsuccessful. In fact, in this case, no reunification services were offered to the father." The court terminated parental rights and set a future hearing to consider placement in compliance with the Act.

### DISCUSSION

### I

■ Appellant first contends the trial court was required to provide him reunification services once the tribe determined the minor was an Indian child. Respondent makes numerous arguments as to why appellant is not entitled to relief. Since we will find that DHHS's efforts to notify and involve appellant in the proceedings satisfy the requirements of the Act, we do not address respondent's other arguments.

The Act requires that "[a]ny party seeking . . . termination of parental rights to . . . an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d).) "A tribe's determination that the child is or is not a member of or eligible for membership in the tribe is conclusive." (Cal. Rules of Court, rule 1439(g)(1) [further undesignated rule references are to the California Rules of Court].)

Appellant does not contend that attempts to notify him of the dependency proceedings were inadequate, and the record would not support such a contention. DHHS delivered to appellant's residence an offer to provide services prior to any court intervention. When appellant did not respond, DHHS delivered to his residence notices of the juvenile court proceedings that had been initiated. Again, he did not respond. The minor's mother told DHHS that she had seen appellant and that he "would probably not be available" to DHHS because he had an outstanding warrant and, we may infer, he did not want to risk being arrested. This demonstrates that defendant was aware of the opportunities to receive services but decided to avoid them.

Instead, he argues that, even though he did not appear in the proceedings for close to a year, he was entitled to reunification services once he appeared. We do not agree.

The Act requires that active efforts be made to provide services, not that services be provided regardless of when a parent becomes available to receive those services. Even had DHHS known of the minor's Indian heritage, they would not have been able to provide services to appellant during the period of reunification because he chose to make himself unavailable. Assuming that DHHS was required to show compliance with the "active efforts" requirement for a period prior to when they became aware the Act might apply, we find that their repeated attempts to contact appellant and to notify him of the proceedings satisfy the requirement.

Appellant argues his request for services should not be deemed untimely because the Act provides that a parent "may petition any court of competent jurisdiction to invalidate [an] action [for termination of parental rights] upon a showing that such action violated" other specified provisions including the "active efforts" requirement. (25 U.S.C. § 1914.)

Appellant's Indian heritage was not known to DHHS or the juvenile court until after the reunification period had ended. Once he advised the juvenile court of his heritage, the court required compliance with the Act. As appellant has failed to show that the Act was violated, his argument as to timeliness fails.

II-IV*

*See footnote, *ante*, page 423.

## Disposition

The order of the juvenile court is affirmed.

Scotland, P. J., and Sims, J., concurred.